UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                              CASE NO.

**ANN RUTH BAEHR**                                                  **15-10452**
                                                                    SECTION A
DEBTOR                                                              CHAPTER 7

## REASONS FOR DECISION

On February 27, 2015, Debtor, Ann Ruth Baehr ("Baehr"), filed a Voluntary Petition for
Relief under Chapter 7.[1]  On April 29, 2015, Baehr filed an Amended Schedule C - Property
Claimed as Exempt.[2]  In her Amended Schedule C, Baehr listed as an exemption past-due wages and
future payments owed from her ex-husband, Troy G. Broussard ("Broussard"), pursuant to a Consent
Judgment dated August 8, 2012.

On May 28, 2015, the Chapter 7 Trustee, Aaron E. Caillouet ("Trustee"), filed an Objection
to Baehr's claimed exemption.[3]  On June 16, 2015, Baehr filed a Response to the Objection.[4]  On
June 19, 2015, Trustee filed a Reply to Baehr's Response.[5]  Thereafter, a status conference was
conducted and the matter was set for trial.[6]  Trial was held on October 21, 2015, following which
the matter was taken under submission.[7]

---

[1]  P-1; P-42, ¶ 1; P-48, ¶ 1.

[2]  P-39, p. 7.

[3]  P-42.

[4]  P-48.

[5]  P-50.

[6]  P-56.

[7]  P-68.

## I. FINDINGS OF FACT

In 2001, Baehr began working as an attorney for the Law Office of Broussard, a subchapter S corporation. She was paid a salary plus a share of the fees generated on certain cases.

In November, 2004, Baehr and Broussard were married. After their marriage, Broussard donated a twenty-five percent (25%) interest in the firm to Baehr.

Baehr testified that during the years 2004 through 2007, she earned wages in excess of $90,000.00. Broussard testified that during this same time period he earned roughly the same salary. In 2008, however, the firm's payment structure changed.

In order to reduce their personal tax burden, in 2008 Baehr and Broussard elected to lower their salaries. Beginning in 2008, each received a salary of approximately $48,000.00. Any profits derived from the firm were distributed to them as owners at the end of the year. Baehr received approximately the same salary for 2009 and 2010.

In 2011, Baehr received wages of approximately $44,000.00.[8]

Baehr and Broussard separated on September 15, 2011.

On December 19, 2011, Baehr's employment at the Broussard law firm was terminated.

On August 7, 2012, in connection with their divorce proceedings,[9] Baehr and Broussard entered into a Consent Judgment Regarding Child Support and Custody, Spousal Support and Property.[10] The Consent Judgment was signed not only by Baehr and Broussard, but also by their

---

[8] Exh. 8, Baehr's Form W-2 Wage and Tax Statement 2011.

[9] The couple divorced on October 19, 2012.

[10] Exh. 5.

2

respective legal representatives.[11]  The Consent Judgment provided that Baehr would receive one half of the law firm's collectible account receivables.[12]  The parties entered into a stipulation as to what the receivables were worth and agreed that Baehr was entitled to $200,000.00 to be paid in increments of $4000.00 per month over a period of five (5) years with interest at a rate of 7.5%.[13]  In furtherance of the Consent Judgment, Broussard executed a Promissory Note promising to pay Baehr $200,000, payable in the amount of $4000.00 per month.[14]  Broussard retained the receivables and incurred the risk of non-collectability.

## II.  LAW and ANALYSIS

From the time Baehr began working as an attorney, she was paid wages.  When she married Broussard, she was given a twenty-five percent (25%) interest in the firm, with Broussard retaining a seventy-five percent (75%) interest.  Despite the difference in their ownership interests, experience or hours worked, Baehr and Broussard were paid roughly the same amount in salary.[15]

In 2008, the payment arrangement changed.  In order to reduce their personal tax burden, Baehr and Broussard agreed to reduce their wages to approximately $48,000.00 and take any other distributions from the firm in the form of profits.  This reduced employment taxes payable on their income because wages are subject to self employment taxes while profits are not.[16]

---

[11]  Exh. 5, p. 00018.

[12]  The receivables were earned when contracts with clients were signed.  There were no billing records.

[13]  Exh. 5, pp. 00016-00017.

[14]  Exh. 6.

[15]  Trial testimony of Broussard.

[16]  Baehr complained that she never actually received a check based upon profits, but confuses allocations of profit or imputed income from a Subchapter S Corporation with cash receipts.

3

On September 15, 2011, Baehr and Broussard legally separated.  Baehr received her usual salary during 2011.  Her employment was terminated on December 19, 2011, ending her right to salary.  Nevertheless, Baehr, as a twenty-five percent (25%) owner of the law firm was entitled to a share of its profits.

In connection with the divorce proceedings, Baehr and Broussard had to determine how they would divide their community interest in the law firm.  Although Baehr owned only 25% of the firm and Broussard 75%, the income from their ownership interests was a community asset.  Therefore despite the difference in their ownership shares, the profits of the company were equally owned by Baehr and Broussard.[17]  On August 8, 2012, a Consent Judgment was entered wherein the firm's receivables were treated as community assets, one-half the value of which was paid to Baehr as represented by a promissory note.

Baehr was paid wages by the subchapter S corporation at levels commiserate with past practices through December 19, 2011, the termination date of her employment.  There is nothing to suggest wages were reduced by artifice or fraud.  The reduction of wages in 2008 was done with Baehr's consent to lessen her tax liability on money received.

Contrary to Baehr's argument, receivables are monies owed to the law firm by clients and do not constitute wages of either Baehr or Broussard.  In fact, all receivables subject to the Consent Judgment were earned by the subchapter S corporation prior to September 15, 2011, the date of the couple's separation.  Baehr was paid wages through December 19, 2011, her termination date.  Baehr's wages of approximately $44,000.00 are evidenced by her Form W-2 Wage and Tax

---

[17] According to  La. C.C. art. 2339, the income produced from separate property is community income unless a declaration by authentic act to the contrary is executed.

4

Statement 2011.[18]  Thereafter, the money she received represented profits of the corporation.  That the money Baehr received in 2012 was not wages is evidenced by the fact that Baehr did not receive a Form W-2 Wage and Tax Statement for 2012.[19]  Instead, a 2012 Form 1099 was issued, designating the money Baehr received as miscellaneous income.[20]  There is no evidence that past due wages are owed to Baehr by the subchapter S corporation.

Under the Consent Judgment, Baehr received a fifty percent (50%) equalizing payment, an amount in excess of her twenty-five percent (25%) ownership interest in the Corporation.  The Court concludes that this was done, despite the fact that Broussard owned a seventy-five (75)% interest in the corporation, because the profits were considered community property.

Under La. R.S. § 13:3881(A)(1)(a), seventy-five percent (75%) of a Debtor's disposable earnings for any week are exempt from seizure.[21]  The monies at issue are not earnings, but rather, payments made pursuant to a promissory note executed by Broussard in favor of Baehr and represent an equalizing payment for the retention of community assets, to wit, the undistributed profits of the law firm.  Payments made to a Debtor under a promissory note have long been deemed property of the estate and, therefore, not exempt from seizure.[22]

---

[18]  Exh. 8.

[19]  Exh. 9.

[20]  Exh. 18.

[21]  As Louisiana has "opted out" of the federal exemptions, the Court looks to Louisiana law to determine whether an exemption applies.  *In re Burns*, 482 B.R. 164, 166 n. 8 (Bankr. E.D. La. Oct. 5, 2012); *In re Manso*, 348 B.R. 74, 75 n.1 (Bankr. E.D. La. Feb. 9, 2005); *In re Ballard*, 238 B.R. 610, 624 (Bankr. M.D. La. Aug. 25, 1999).

[22]  *Telesphere Liquidating Trust v. Galesi*, 246 B.R. 315, 319-20 (N.D. Ill. Mar. 16, 2000) (promissory note payable to the debtor is property of the debtor's bankruptcy estate); *In re Klarchek*, 508 B.R. 386, 395 (Bankr. N.D. Ill. Apr. 10, 2014) (same).

Trustee's Objection to Baehr's claimed exemption on Amended Schedule C[23] is

**SUSTAINED**.

A separate Order will be rendered in accord with these Reasons for Decision.

---

[23] P-42.