UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                          CASE NO.

**ANN RUTH BAEHR**                                              **15-10452**
                                                                SECTION A
DEBTOR                                                          CHAPTER 7

## REASONS FOR DECISION

On September 23, 2015, Debtor, Ann Ruth Baehr ("Baehr"), filed a Motion to Avoid Lien and Cancel Inscription pursuant to 11 U.S.C. § 522(f).[1]  On October 12, 2015, Creditor, N.E.N.H., L.L.C. ("NENH"), filed an Opposition.[2]  On October 22, 2015, the Court held a hearing, following which the matter was taken under submission.

## I. FINDINGS OF FACT

On March 27, 2012, NENH filed suit on a promissory note and for recognition of a second mortgage on commercial property owned by Baehr and her former spouse.  Recognition of the mortgage became moot as a superior mortgage holder had the property seized and sold on January 9, 2013.  As a result of the sale, NENH's mortgage was cancelled.[3]

On May 8, 2013, NENH obtained a personal judgment against Baehr in the principal amount of $144,171.57.  The judgment was properly recorded in the records of Jefferson Parish.[4]  At that time, Baehr owned no property to secure payment of the judgment.

On January 22, 2014, Baehr purchased a home for a sales price of $795,000.00.  NENH subordinated its judgment in favor of First NBC Bank, the entity financing the purchase of the

---

[1] P-59.

[2] P-62.

[3] P-62, ¶ 3.

[4] P-62, ¶ 4.

property.[5]

On February 27, 2015, Baehr filed a petition for relief under Chapter 7 of the Bankruptcy Code.[6] In her bankruptcy schedules Baehr claimed a $35,000.00 homestead exemption on the home.[7]

## II. ANALYSIS

11 U.S.C. § 522(f)(1)(A) provides in pertinent part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

    (A) a judicial lien ....

11 U.S.C. § 522(f)(2)(A) sets forth an arithmetic test to determine whether a lien impairs an exemption, providing:

A lien shall be considered to impair an exemption to the extent that the sum of–

    (i) the lien;
    (ii) all other liens on the property; and
    (iii) the amount of the exemption that the debtor could claim if there
    were no liens on the property;
exceeds the value of the debtor's interest in the property in the absence of any liens.

In *In re Brantz*, 106 B.R. 62, 68 (Bankr. E.D. Pa. Oct. 2, 1989), the Court set forth the following formula:

1. Determine the value of the property upon which the judicial lien attaches.
2. Deduct the amount of all unavoidable liens from (1) (*i.e.*, priming liens).
3. Deduct the Debtors' allowable exemptions from (2)

---

[5] P-62, ¶ 5.

[6] P-59, ¶ 3

[7] P-59, ¶ 6.

    4. Avoidance of the judicial lien results unless (3) is a positive figure.
    5. If (3) is a negative figure, disallow the liens, in order of priority, until (3) is neutral.

Baehr's property is worth $680,000.00.[8] Baehr owes approximately $750,000.00 on her First NBC Bank mortgage.[9] Baehr has also claimed a $35,000.00 homestead exemption. When the mortgage lien ($750,000.00) and the exemption ($35,000.00) are subtracted from the property's value ($680,000.00), the result is a negative number meaning the entirety of NENH's $144,000.00 judicial lien is avoidable. *See In re Cross*, 164 B.R. 496, 497 (Bankr. E.D. Pa. March 7, 1994) (where there is no remaining equity in the property after the deduction of non-avoidable mortgages and debtors' exemption, the judicial lien is avoidable in its entirety); *In re Levasseur*, 482 B.R. 15, 35 (Bankr. D. Mass. Oct. 29, 2012) (where the judicial lien in its entirety impairs the debtor's exemption, § 522(f)(1)(A) requires avoidance of the lien in full).

NENH argues that its judicial lien cannot be avoided according to the Supreme Court's decision in *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). In *Farrey*, the parties were married and jointly owned their home. As part of a Consent Judgment, Sanderfoot was granted full ownership of the property and Farrey was granted an equalizing payment secured by a lien on the home. Rather than execute a security agreement on the home, the parties simply recorded the Consent Judgment. As a result, the Consent Judgment created a judicial lien over the home to secure the equalizing payment.

---

[8] *See* Exhibit 1. Marian Freeman ("Freeman") was accepted without objection as an expert in real estate appraisal. While Baehr purchased her home approximately two (2) years ago for $795,000.00, Freeman attributed the significant depreciation of the home to the serious defects her inspection uncovered. These defects included buckled floors, a leaking roof, and faulty air conditioning and sprinkler systems.

[9] *See* Exhibit 2 reflecting the balance owed on the mortgage as of August 11, 2015.

Sanderfoot filed for bankruptcy relief and sought to avoid Farrey's lien. When the amounts due under the first mortgage and homestead exemption were combined, there was no equity in the property to secure the equalizing payment granted by the Consent Judgment. Nevertheless, the Supreme Court refused to avoid the lien. The Court reasoned that because the Consent Judgment was the very act that transferred the property interest, avoiding the lien securing the cost of acquisition would be unfair.[10]

Several courts have narrowly interpreted *Farrey*, limiting it to its facts. *See In re Pacheco*, 342 B.R. 352, 356 (Bankr. D. N.M. May 23, 2006) (limiting *Farrey* to a situation where a lien is created in connection with, or as a direct result of the debtor's acquisition of property. The fixing of the lien was the direct result of the divorce decree which created both the lien and the debtor's property interest); *In re Perez*, 391 B.R. 190, 192 (Bankr. S.D. Fla. June 5, 2008) (noting that Sanderfoot took the property and the lien together, as if he had purchased an already encumbered estate from a third party); *In re Anderson*, 496 B.R. 812, 817 (Bankr. E.D. La. July 26, 2013) (declined to follow reasoning in *Farrey* outside the context of a divorce proceeding).[11]

---

[10] "To permit a debtor in these circumstances to use the Code to deprive a spouse of this protection would neither follow the language of the statute nor serve the main goal it was designed to address." *Farrey*, 500 U.S. at 301, 111 S.Ct. at 1831 (distinguishing between a judicial lien and a lien to secure the acquisition of property).

[11] *But see Owen v. Owen*, 961 F.2d 170 (11th Cir. 1992) (wife acquired judgment against husband before he acquired property; therefore, judgment lien could not be avoided); *In re Scarpino*, 113 F.3d 338 (2nd Cir. 1997) (debtor who had judgment lien recorded against him while he owned no property, but later acquired property, was not entitled to avoid the lien pursuant to § 522(f)(1)(A); *In re Pederson*, 230 B.R. 158 (9th Cir. BAP 1999) (same). The problem with applying *Farrey* beyond the parameters of its facts is aptly illustrated:
> Assume that the creditor has obtained a judgment against the debtor. Several years later, the debtor acquires property in the county in which the judgment is docketed. In many states, the creditor's lien will attach immediately to the property. Since it would attach at the same time as the debtor's interest in the property, [*Farrey*] would suggest that the lien could not be avoided. When this result is compared to the treatment that a creditor would receive if it obtained a judgment against the debtor while the debtor owned the property, the flaw in the analysis becomes more clear. A creditor who takes action against a debtor because the debtor has some property arguably is acting in a rational manner, hoping that it will obtain a judgment and have that judgment paid out of the debtor's real estate. Nevertheless, that judicial lien could be avoided

This Court holds that the distinguishing feature that materially affects application of *Farrey* to this case is the consensual or non-consensual nature of the lien in question. The Supreme Court's reluctance to avoid the lien in *Farrey* can be explained because the created lien was consensual. As in the *Dewsnup v Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and the *Bank of America, N.A. v. Caulkett*, __ U.S. __, 135 S.Ct. 1995, 192 L.Ed.2d 52 (2015) cases, the Supreme Court has refused to strip consensual liens in Chapter 7 proceedings even when there is no equity in the property to secure their repayment.[12] However, the Supreme Court has also limited this exception to *consensual* liens.[13]

The judgment in this case is not consensual. It was an unsecured lien prior to the acquisition of debtor's home and an unsecured lien today. Even as of the purchase date, the home's fair market value less the outstanding first mortgage and homestead exemption left little, if any, equity for NENH's benefit. Assuming for the sake of argument that NENH had even a dollar of equity when the home was purchased, costs of sale or foreclosure would have eliminated even this razor thin

---

under section 522(f)(1)(A). A creditor who obtains a judgment against the debtor who has no property, however, would receive more favorable treatment if the debtor later obtained real estate. Neither creditor is acting in any direct reliance on specific property of the debtor, but at least the creditor who sues a debtor who owns real estate is acting knowing that some property exists from which to obtain payment of a judgment. Nonetheless, that creditor receives less protection under the analysis of *Farrey* .... 4 Collier on Bankruptcy ¶ 522.11[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

For this and the reasons set forth in these Reasons, the Court respectively disagrees with the above holdings.

[12] 11 U.S.C. § 506 provides that the secured claim is equal to the value of the estate's interest in the property. This provision has traditionally been used to cram down or eliminate security interests of all types on property of the estate when the property's value is less than the debt it secures. *See, e.g. Wade v. Bradford*, 39 F.3d 1126, 1129 (10th Cir. 1994) (Chapter 11 debtors allowed to strip creditor's consensual mortgage lien down to the value of the collateral); *In re Bartee*, 212 F.3d 277, 291 (5th Cir. 2000) (Chapter 13 debtor allowed to strip entirely unsecured consensual mortgage lien). Nevertheless, the Supreme Court has declined in Chapter 7 proceedings to interpret the statute in the same manner it has in Chapter 11 or 13.

[13] *See Dewsnup*, 502 U.S. at 416-17 ("We . . . focus upon the case before us and allow other facts to await their legal resolution on another day.")

possibility of value for its lien. In reality, NENH's position would only improve if debtor substantially paid down her mortgage or the property appreciated in value. Neither has happened. NENH's agreement to subordinate its lien in favor of First NBC Bank had as its motive a hope that the home might one day serve as security for its debt. It cannot be said that NENH's position was adversely affected by its actions.

Having found that the prior recording of a judgment against Baehr and her subsequent acquisition of property does not render 11 U.S.C. § 522(f)(1)(A) inapplicable, Baehr's Motion to Avoid Lien and Cancel Inscription[14] is **GRANTED**.

A separate Order will be rendered in accord with these Reasons for Decision.

New Orleans, Louisiana, November 16, 2015.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[14] P-59.